CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
TERRA CASTILLO LAUGHTON (Bar No. 321683)
(E Mail:  Terra_Laughton@fd.org)
Deputy Federal Public Defender
411 West Fourth Street, Suite 7110
Santa Ana, California  92701-4598
Telephone:  (714) 338-4500

Attorneys for Defendant
WAYNE K. BRIDGEWATER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>WAYNE BRIDGEWATER,<br><br>              Defendant. | Case No. 2:02-cr-00938-DOC-13<br><br>**NOTICE OF MOTION; MOTION FOR COMPASSIONATE RELEASE AND/OR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A); MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS** |

1

1  Defendant Wayne Bridgewater by and through his attorney of record, Deputy
2  Federal Public Defender Terra Castillo Laughton, hereby moves for compassionate
3  release and/or a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1). This motion
4  is based on the attached memorandum of points and authorities, attached exhibits, and
5  all the records in this case.  Undersigned counsel conferred with AUSA JohnPaul
6  LeCedre regarding this motion.  Mr. LeCedre indicated the government opposes the
7  motion.

8  Respectfully submitted,

9  CUAUHTEMOC ORTEGA
10  Federal Public Defender

11  DATED:  September 18, 2025        By  /s/  Terra Castillo Laughton
12  TERRA CASTILLO LAUGHTON
13  Deputy Federal Public Defender

# TABLE OF CONTENTS

Page (s)

I. INTRODUCTION ...............................................................................1

II. FACTUAL BACKGROUND ...........................................................2

III. ARGUMENT ..................................................................................2

    A.    Legal Standard ........................................................................2

    B.    Former BOP officials encourage compassionate release to alleviate the drain of critical resources caused by intensive medical care for aging inmates. ..................................................................................4

    C.    Mr. Bridgewater has exhausted his administrative remedies. ...................5

    D.    Mr. Bridgewater can show "extraordinary and compelling reasons."........5

        1.    Mr. Bridgewater's serious medical conditions are an extraordinary and compelling reason under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(1)(B), (b)(1)(C), and (b)(5). ..........................6

        2.    Mr. Bridgewater's age and the time he has spent in custody separately qualify as an extraordinary and compelling reason under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(2) ......................9

    E.    The § 3553(a) factors counsel in favor of a time-served sentence. ...........11

        1.    Mr. Bridgewater's history and characteristics and the nature and circumstances of the offense...........................................................11

        2.    The impacts of decades of solitary confinement ............................12

IV. CONCLUSION ...............................................................................14

i

# TABLE OF AUTHORITIES

**Page (s)**

**Federal Cases**

*Rutherford v. United States*,
    Docket No. 24-820.................................................................................2, 4

*United States v. Bailey*,
    No. 8:92-CR-122-T-27, 2020 WL 4261403 (M.D. Fla. July 24, 2020).................10

*United States v. Barrenechea*,
    2020 WL 2315638 (N.D. Cal. May 7, 2020)..........................................................5

*United States v. Bell*,
    No. 2:15-CR-00011-JCM-CWH, 2025 WL 305199 (D. Nev. Jan. 27,
    2025)......................................................................................................................2

*United States v. Ennis*,
    No. EP-02-CR-1430-PRM-1, 2020 WL 2513109 (W.D. Tex. May 14,
    2020)....................................................................................................................10

*United States v. Heffington*,
    476 F. Supp. 3d 1043 (E.D. Cal. Aug. 4, 2020) ..................................................10

*United States v. Mondaca*,
    No. 89-cr-655-DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) .....................11

*United States v. Plunk*,
    453 F. Supp. 3d 1308 (D. Alaska Apr. 9, 2020)...................................................10

*United States v. Rice*,
    No. 12-CR-00818-PJH-1, 2025 WL 1707525 (N.D. Cal. June 18, 2025) ...............5

*United States v. Seresi*,
    2:89-cr-00190-SVW-17, ECF No. 1417 (C.D. Cal. Nov. 12, 2020).......................3

*United States v. Wheeler*,
    2:04-cr-329-GAF-TJH, ECF Nos. 348, 349 (C.D. Cal. Jan. 22, 2021)...................3

*United States v. Wright*,
    46 F.4th 938 (9th Cir. 2022) ........................................................................1, 2, 3

# TABLE OF AUTHORITIES

**Page (s)**

**Federal Statutes**

18 U.S.C. § 1959 ........................................................................................2

18 U.S.C. § 1962 ........................................................................................2

18 U.S.C. § 3142(g) ..................................................................................11

18 U.S.C. § 3553(a) ...........................................................................3, 11, 14

18 U.S.C. § 3582(c)(1) ........................................................................*passim*

First Step Act of 2018, P.L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) ...............1

**Other Authorities**

Brie Williams, MD, MS, *U.S. Sent'g Comm'n Public Hearings on
    Compassionate Release and Conditions of Sentencing* (Feb. 17, 2016) ..................9

Bureau of Prisons Program Statement 5050.50 ........................................................2

*Interim Rep. of the Special Rapporteur of the Human Rights Council on
    torture and other cruel, inhuman, or degrading treatment or
    punishment*, U.N. Doc. A/66/268 (Aug. 5, 2011) ....................................13

James Dowdell et al., *Postoperative Spine Infection: Diagnosis and
    Management*, 8 Global Spine J. (Dec. 2018) ........................................8

Office of the Inspector General, Dep't of Justice, *The Impact of an Aging
    Inmate Population on the Federal Bureau of Prisons* (2016) ...................................9

Satoshi Ogihara et al., *Risk Factors for Surgical Site Infection After
    Lumbar Laminectomy* (Oct. 16, 2018) .......................................8

Stuart Grassian, *Psychiatric Effects of Solitary Confinement,* 22 Wash. U.
    J.L. & Pol'y 325, 329 (2006) ........................................14

United Nations Standard Minimum Rules for the Treatment of Prisoners .................14

U.S.S.G. § 1B1.13 ........................................................................*passim*

U.S. Sent'g Comm'n, *Compassionate Release Data Reports* .......................................3

U.S. Sent'g Comm'n, *The Effect of Aging on Recidivism Among Federal
    Offenders* (Dec. 2017) ........................................11

iii

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. INTRODUCTION

Mr. Bridgewater is now 73 years old.  After serving more than 45 years in federal custody, decades of solitary confinement at ADX Florence have taken a toll.  Among other medical issues, his excruciating chronic back pain was worsened by a laminectomy and spinal fusion in 2021—after which his incision tore open, exposing his muscles and spine.  Ex. 4.  A more recent back surgery completed earlier this summer has failed to relieve his constant pain.

Under the First Step Act, this Court has an opportunity to reconsider Mr. Bridgewater's sentence.[1]  Multiple factors identified in the Sentencing Guidelines establish Mr. Bridgewater's eligibility for relief, including several extraordinary and compelling reasons due to his severe medical conditions, as well as the combination of his age, time served, and deterioration in health.  Moreover, Mr. Bridgewater has grown as a person and has been rehabilitated during his nearly fifty years in prison, and he poses no ongoing risk to society.

Mr. Bridgewater respectfully requests a reduction to a time-served sentence and/or compassionate release, so that he may live out his remaining years out of custody, while receiving necessary, life-preserving medical treatment.  As discussed below, Mr. Bridgewater has exhausted his administrative remedies.  *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022).[2]

In a recently-filed amicus brief at the U.S. Supreme Court, former BOP officials describe the "disproportionate and unnecessary drain on BOP resources caused by keeping reformed inmates imprisoned as they age and their health deteriorates."  Brief

---

[1] First Step Act of 2018, P.L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) ("First Step Act").

[2] Mr. Bridgewater understands that he does not have a right to be present at any hearing on this motion.  However, if a hearing is held, Mr. Bridgewater requests to appear by video if at all possible.  Undersigned counsel is willing to coordinate such an appearance with the correctional facility.

1

of Amici Curiae Former Corrections Officials in Support of Petitioners, *Rutherford v. United States*, Docket No. 24-820 (filed Aug. 14, 2025), attached hereto as Ex. 8, at 3. These former officials encourage compassionate release as a solution that "enables reallocation of resources to other priorities, including critical safety and security needs with significant benefits for BOP staff and inmates." *Id.* at 4.

## II. FACTUAL BACKGROUND

Mr. Bridgewater was charged in 2002 along with dozens of other defendants in a multi-count indictment alleging various violations of Racketeer Influenced and Corrupt Organizations Act ("RICO") and Violent Crimes in Aid of Racketeering ("VICAR") statutes. *See* ECF Nos. 1, 2295. Mr. Bridgewater was convicted on four counts, which included a substantive violation of RICO, in violation of 18 U.S.C. § 1962(c) (Count 1); conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count 2); and two counts of VICAR, 18 U.S.C. § 1959(a)(1) (Counts 6 and 7). Though Mr. Bridgewater was death-penalty eligible, the jury did not return a death penalty verdict. *See* ECF No. 5470. On March 26, 2008, this Court sentenced Mr. Bridgewater to serve consecutive life sentences. ECF No. 5919.

## III. ARGUMENT

### A.   Legal Standard

"Following the passage of the First Step Act, defendants are authorized to directly petition the court for compassionate release after exhausting their administrative remedies within the Bureau of Prisons." *Wright*, 46 F.4th at 945. Whether to grant compassionate release or a reduction in sentence is ultimately "within the district court's discretion."[3] *United States v. Bell*, No. 2:15-CR-00011-JCM-CWH, 2025 WL 305199, at *2 (D. Nev. Jan. 27, 2025). In exercising that discretion, district

---

[3] A reduction in sentence and compassionate release are functionally the same. *See* Bureau of Prisons Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* at 1 ("For the purposes of this Program Statement, the terms 'compassionate release' and 'reduction in sentence' are used interchangeably."). This program statement is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

2

courts must find the following three requirements are met: (1) "extraordinary and compelling reasons warrant a sentence reduction"; (2) a reduction "would be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) pursuant to the factors in 18 U.S.C. § 3553(a), a sentence reduction is "warranted under the particular circumstances of the case." *Wright*, 46 F.4th at 945 (cleaned up); *see also* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Since the First Step Act was enacted in December 2018, district courts have granted compassionate release in well over 5,000 cases—and counting. *See* U.S. Sent'g Comm'n, *Compassionate Release Data Report*, Preliminary Fiscal Year 2025 Cumulative Data through 3rd Quarter at 4;[4] U.S. Sent'g Comm'n, *Compassionate Release Data Report*, Preliminary Fiscal Year 2024 Cumulative Data through 4th Quarter at 4.[5] Some of these individuals, including in this District, were granted compassionate release because they suffered from medical conditions that had developed with age. *See, e.g.*, *United States v. Wheeler*, 2:04-cr-329-GAF-TJH, ECF Nos. 348, 349 (C.D. Cal. Jan. 22, 2021) (releasing a defendant serving life after only 16 years due to extraordinary and compelling factors like his age (64 years old) and poor health (high blood pressure, high cholesterol, and kidney issues)); *United States v. Seresi*, 2:89-cr-00190-SVW-17, ECF No. 1417 at 2 (C.D. Cal. Nov. 12, 2020) (finding the defendant's rehabilitation, health, and age were, together, "extraordinary and compelling reasons").

---

[4] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/compassionate-release/FY25Q3-Compassionate-Release.pdf

[5] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/compassionate-release/FY24Q4-Compassionate-Release.pdf

3

**B.**    **Former BOP officials encourage compassionate release to alleviate the drain of critical resources caused by intensive medical care for aging inmates.**

An amicus brief recently filed by former BOP officials in *Rutherford v. United States* highlights the strain placed on the prison system by older inmates who require intensive medical care, and encourages the use of compassionate release to alleviate that strain.  The amici consist of individuals who have over one hundred years of combined experience working for BOP.  Ex. 8 at 1.  Their conclusions are:

- "As early as 2000, the Government Accountability Office ('GAO') raised alarms that longer sentences and expanded federal criminal prosecutions would produce a larger, older inmate population, causing the difficulty and cost of caring for federal prisoners to balloon.  This forecast proved accurate."  *Id.* at 5.

- "Intensive medical care for inmates consumes a disproportionate share of BOP's scarce resources, with well-documented, cascading effects on federal prison operations and the safety and security of BOP staff and inmates."  *Id.* at 4-5.

- At the same time, "BOP struggles to hire and retain healthcare professionals."  *Id.* at 7.  Overall, BOP's healthcare capabilities are "strained."  *Id.* at 9.

- "BOP's medical-care crisis not only perpetuates itself but interferes with every facet of prison operations."  *Id.* at 11.

- "In sum, aging prisoners consume disproportionate time and funds—two things BOP cannot spare—with cascading consequences for facility safety and security."  *Id.* at 13.

- "Unnecessarily keeping older inmates who could safely be released in prison despite their potential for disproportionately consuming BOP's scarce resources exacerbates this serious problem."  *Id.*

4

- Compassionate release can help alleviate this strain. *Id.* at 4-5.

As discussed below, Mr. Bridgewater's age and medical issues contribute to the medical-care crisis at BOP, with cascading effects for prison operations and security. Compassionate release and/or a reduction in sentence is the appropriate remedy here for this reason as well.

## C.    Mr. Bridgewater has exhausted his administrative remedies.

Mr. Bridgewater has complied with the threshold requirement of exhausting his administrative remedies. Compassionate release can be granted after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphases added). On September 4, 2024, undersigned counsel petitioned the warden for compassionate release. *See* Ex. 1 (email from T. Castillo Laughton).[6] More than 30 days have passed since the request was received. Thus, Mr. Bridgewater's claim is sufficiently exhausted and this motion is ripe. 18 U.S.C. § 3582(c)(1)(A).[7]

## D.    Mr. Bridgewater can show "extraordinary and compelling reasons."

Courts consider the totality of the circumstances when determining whether extraordinary and compelling reasons exist. *See United States v. Barrenechea*, 2020 WL 2315638, at *1 (N.D. Cal. May 7, 2020) (granting compassionate release); *United States v. Rice*, No. 12-CR-00818-PJH-1, 2025 WL 1707525, at *3 (N.D. Cal. June 18, 2025) (same). As discussed in the following sections, Mr. Bridgewater has multiple extraordinary and compelling reasons for relief.

*First*, Mr. Bridgewater suffers from medical conditions that meet four different

---

[6] Defense counsel did so out of an abundance of caution, as Mr. Bridgewater had previously petitioned the warden for compassionate release. *See* Ex. 2.

[7] Since Mr. Bridgewater and his counsel petitioned for compassionated release, Mr. Bridgewater's mother, Betty Bridgewater, has passed away.

5

prongs of Section 1B1.13.  *See* U.S.S.G. § 1B1.13(b)(1)(B)(i) & (iii) ("a serious
physical or medical condition" or "deteriorating physical health because of the aging
process" that "substantially diminishes [his] ability . . . to provide self-care within the
environment of a correctional facility and from which he . . . is not expected to
recover"); U.S.S.G. § 1B1.13(b)(1)(C) ("a medical condition that requires long-term or
specialized medical care that is not being provided and without which the defendant is
at risk of serious deterioration in health or death."); U.S.S.G. § 1B1.13(b)(5) ("any
other circumstance . . . [that is] similar in gravity" to others described in the section).

　　　　*Second*, Mr. Bridgewater separately meets the requirements of Section
1B1.13(b)(2) because he is "(A) is at least 65 years old; (B) is experiencing a serious
deterioration in physical or mental health because of the aging process; and (C) has served
at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."
U.S.S.G. § 1B1.13(b)(2).

　　　　1.　　Mr. Bridgewater's serious medical conditions are an extraordinary
　　　　　　　and compelling reason under § 3582(c)(1)(A) and U.S.S.G.
　　　　　　　§ 1B1.13(b)(1)(B), (b)(1)(C), and (b)(5).

　　　　During the trial proceedings in 2007, Mr. Bridgewater was already suffering
from medical conditions, such that the Court ordered a splenectomy evaluation for Mr.
Bridgewater while he was in custody.  *See* ECF Nos. 5687, 5689.  Mr. Bridgewater's
attorney explained to the jury that Mr. Bridgewater was undergoing scans for his spleen
and that those scans had revealed several masses.  *See* ECF No. 5511 at 36.  His
attorney stated in 2007, "[i]t's clear that [Mr. Bridgewater] is not a healthy man."  ECF
No. 5511 at 38.  Unfortunately, Mr. Bridgewater's health has only declined since then.

　　　　Mr. Bridgewater lives every day with excruciating pain in his neck, back, and
spine.  He suffers from spinal stenosis, which is the narrowing of the spinal canal that
causes severe back pain and can cause numbness in the limbs.  *See generally* Ex. 3*; see*

6

1    *also Spinal Stenosis*, NIH: Nat'l Inst. Arthritis & Muscoloskeletal & Skin Diseases.[8]

2    Mr. Bridgewater has also had bulging discs in his neck and lower back, which press on

3    the nerves in his spine and cause numbness. Ex. 3 at 10, 19.[9] As a result of these

4    issues, Mr. Bridgewater's left leg began to atrophy. *Id.* at 16, 22.

5          The Federal Bureau of Prisons defines chronic pain as

6               an intrusive, uncomfortable, persistent sensation lasting greater
               than 90 days, . . . For example, pain from a surgical wound that
7               has healed or continuing low back pain after disk surgery
               would be classified as chronic if it persists beyond three
8               months after the surgery. Whether continuous or intermittent,
               the pain is of sufficient duration and intensity to adversely
9               affect a patient's well-being, level of function, and quality of
               life.

10

11   Pain Management of Inmates at 4 (June 2018).[10] This describes Mr. Bridgewater's

12   pain.

13         To address his significant back pain, Mr. Bridgewater has had multiple surgeries.

14   In July 2021, Mr. Bridgewater underwent a discectomy, laminectomy, and spinal fusion

15   in his cervical spine (his neck). Ex. 3 at 1, 6, 11. Among other things, the surgery

16   fused his discs together and placed metal rods in his spine. Ex. 5 (x-ray films). The

17   surgery was supposed to last eight hours, but there were complications. The medical

18   staff had difficulty waking Mr. Bridgewater after surgery, and Mr. Bridgewater had an

19   adverse reaction to the anesthesia.

20         A few weeks after the surgery, the surgical wound—Mr. Bridgewater's neck and

21   upper back—tore open and bled. Ex. 3 at 1; Ex. 4 (photo). This is known as complete

22   "wound dehiscense." *See Understanding Wound Separation After Surgery*,

23   Northwestern Medicine;[11] Ex. 3 at 2, 7. The tear started a couple of inches from the

24

25

26        [8] Available at https://www.niams.nih.gov/health-topics/spinal-stenosis

27        [9] Pin cites to the medical records attached as Exhibit 3 refer to the bates stamp in
     the bottom center of the document (e.g., Ex. 3 - 010).

28        [10] Available at https://www.bop.gov/resources/pdfs/pain_mgmt_inmates_cpg.pdf

          [11] Available at: https://encyclopedia.nm.org/Library/HealthSheets/3,S,61070

7

base of his skull, and the wound was so deep that his spine was visible.  *Id.* at 2.  The
open wound was exposed until Mr. Bridgewater was readmitted to the hospital and
medical staff scrubbed it out and put packing material in it to prevent infection.  *Id.* at
4, 7.

This wound dehiscense could have been a sign of infection.  *See* James Dowdell
et al., *Postoperative Spine Infection: Diagnosis and Management*, 8 Global Spine J.
(Dec. 2018).[12]  "Surgical site infection (SSI) after spinal surgery . . . is one of the most
serious complications and could result in high morbidity."  Satoshi Ogihara et al., *Risk
Factors for Surgical Site Infection After Lumbar Laminectomy*, PLOS One (Oct. 16,
2018).[13]  Mr. Bridgewater's severe wound dehiscense is indicative of the inadequate
level of medical care he has received while in BOP custody.

After his 2021 surgery, Mr. Bridgewater's back problems continued.  An MRI
completed in September 2024 revealed ongoing "severe central spinal stenosis" and
disc extrusion, this time in his lower back.  Ex. 3 at 10.  Mr. Bridgewater reported he
was in "constant pain," which he sometimes described as a "sharp shooting pain"
radiating to his left thigh.  *Id.*; *id.* at 22.  In February 2025, he reported his pain as a 9
out of 10 and was walking with a limp.  *Id.* at 13.  After suffering extreme pain for
years, he was finally referred for an additional back surgery to address his "very severe
degenerative disc disease."  *Id.* at 15, 16, 22.  In July 2025, he had a laminectomy and
fusion in his lumbar spine.  *Id.* at 22, 16.

Unfortunately, this most recent surgery has not relieved his pain. In an August
2025 appointment, Mr. Bridgewater described his pain as an 8.5 out of 10.  *Id.* at 25.
Shortly after the surgery, he reported that his pain was "not better, no worse than prior
to surgery."  *Id.* at 20.

---

[12] Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6295816/
[13] Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6191117/

Aside from his persistent back pain, doctors have also diagnosed Mr. Bridgewater with dilated pancreatic and biliary ducts and hemangiomas of the spleen. *Id.* at 12.  He has multiple splenic lesions and an enlarged prostate.  *Id.* at 9, 8.  He also suffers from high blood pressure.  *Id.* at 8.

2.  <u>Mr. Bridgewater's age and the time he has spent in custody separately qualify as an extraordinary and compelling reason under § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(2)</u>

Under Section 1B1.13(b)(2), extraordinary and compelling reasons exist where a defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75% of his term of imprisonment, *whichever is less*. U.S.S.G. § 1B1.13(b)(2) (emphasis added).

This provision for compassionate release for aging inmates was added by the Sentencing Commission in 2016 after a Department of Justice report indicated that the aging population in the BOP was particularly costly to house because of their increased need for expensive prescription drugs and chronic medical care, yet those same individuals presented an exceedingly low risk of recidivism. *See* Office of the Inspector General, Dep't of Justice, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (2016) ("OIG Report").[14]

Moreover, as detailed in 2016 testimony to the Sentencing Commission, many incarcerated individuals experience accelerated aging in prison, such that they often present as 10-15 years older than their chronological age.  *See* Testimony of Brie Williams, MD, MS, *U.S. Sent'g Comm'n Public Hearings on Compassionate Release and Conditions of Sentencing* (Feb. 17, 2016).[15]  The skyrocketing cost of providing healthcare to aging inmates, paired with the diminishing rate of recidivism as

---

[14] Available at https://oig.justice.gov/sites/default/files/reports/15-05.pdf
[15] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20160217/williams.pdf

9

individuals age, led the Department of Justice's Office of Inspector General to conclude that compassionate release for aging inmates could save significant amounts of money without risking the safety of the community. OIG Report; *see also* Ex. 8.

Mr. Bridgewater meets the requirements of Section 1B1.13(b)(2) as follows:

| U.S.S.G §1B1.13(b)(2) CRITERIA | WAYNE BRIDGEWATER |
|---|---|
| (i) is at least 65 years old | 73 years old |
| (ii) is experiencing a serious deterioration in physical or mental health because of the aging process | suffers from various age-related deteriorating physical conditions, including: (1) chronic neck and back pain, (2) spinal stenosis, (3) enlarged pancreas, (4) splenic lesions, (5) nerve damage, (6) enlarged prostate, and (7) high blood pressure |
| (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less | has served more than 45 years of his life in prison and more than 17 years since being sentenced in this case |

In considering compassionate release, courts have read the definition of "age-related medical conditions" broadly, applying it to conditions similar to those from which Mr. Bridgewater suffers, such as: hypertension, hyperlipidemia, kidney disease, and a swollen prostate. *See United States v. Bailey*, No. 8:92-CR-122-T-27, 2020 WL 4261403, at *3 (M.D. Fla. July 24, 2020) (finding age-based deterioration in 73-year-old defendant based on hyperlipidemia, hypertension, stage 3 chronic kidney disease, cardiac murmur, and an extensive history of coronary artery disease); *United States v. Ennis*, No. EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *2 (W.D. Tex. May 14, 2020) (diabetes mellitus, hypertension, arthritis, asthma, hypothyroidism, hyperlipidemia, and spinal stenosis constituted age-related medical conditions for 71-year-old defendant); *United States v. Plunk*, 453 F. Supp. 3d 1308, 1312-13 (D. Alaska Apr. 9, 2020) (degeneration in the cartilage of the joints, lower back pain, arthritis, high blood pressure, a swollen prostate, age related eyesight and hearing loss); *United States*

*v. Heffington*, 476 F. Supp. 3d 1043, 1049 (E.D. Cal. Aug. 4, 2020) (defendant suffered from chronic obstructive pulmonary disease, asthma, emphysema, morbid obesity, and benign hypertension); *United States v. Mondaca*, No. 89-cr-655-DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (defendant suffered from "benign prostatic hypertrophy", "mild-to-moderate degenerative disc disease" and decrease in memory).

Like the defendants in these cases, Mr. Bridgewater qualifies for relief under Section 1B1.13(b)(2).

\*        \*        \*

Because Mr. Bridgewater's medical conditions meet the definition of extraordinary and compelling circumstances and he otherwise satisfies the requirements of Section 1B1.13, a reduction in sentence is "consistent with the applicable policy statements issued by the Sentencing Commission."[16]  18 U.S.C. § 3582(c)(1)(A).

**E.    The § 3553(a) factors counsel in favor of a time-served sentence.**

    1.    <u>Mr. Bridgewater's history and characteristics and the nature and circumstances of the offense</u>

Unfortunately, no Presentence Report was prepared for Mr. Bridgewater. *See* ECF 7450 at 4-5.  Undersigned counsel has reconstructed some of Mr. Bridgewater's life from Mr. Bridgewater's own telling and from his attorney's closing argument at trial.  *See* ECF 5511.

As a child growing up in Renton, Washington, Mr. Bridgewater loved playing organized sports.  At around 15 years old, Mr. Bridgewater was introduced to

---

[16] The Policy Statement in Section 1B1.13 also states that the court should determine that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. §1B1.13(a)(2).  This language is absent from the applicable statute, 18 U.S.C. § 3582(c)(1).  To the extent Mr. Bridgewater must show he does not pose a danger to the community, he can do so. Mr. Bridgewater is a 73-year old man debilitated by significant health issues.  His age alone makes him unlikely to recidivate.  *See* U.S. Sent'g Comm'n, *The Effect of Aging on Recidivism Among Federal Offenders* at 23 (Dec. 2017) (reflecting that individuals over 65 have only a 4.1% chance of being reincarcerated), *available at* https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.  In addition, he has been in prison for decades working on his rehabilitation.

marijuana and began drinking alcohol.  He dropped out of school and began using
methamphetamine and, later, heroine.  To support his drug addiction, Mr. Bridgewater
engaged in a series of theft-related crimes.  Mr. Bridgewater has been in custody almost
continuously since he was 21 years old.  For all intents and purposes, he has grown up
in prison.

While incarcerated, Mr. Bridgewater has exhibited his strong work ethic.  At
USP Marion, he worked as a pressman and rose through the ranks to achieve First
Grade.  He later became a cell house orderly and received good reviews.  By 1986, he
had risen to Super Grade, the highest grade possible.  For a short time at USP Lompoc,
Mr. Bridgewater worked in the kitchen.  Over the next decade, he worked in several
roles in the factory, on the trash crew, and as an outside orderly.

Though Mr. Bridgewater takes full responsibility for his actions that resulted in
the death of two inmates and injuries to another, a witness at trial testified to Mr.
Bridgewater's reluctance to act.  *See* ECF 5511 at 46.  Mr. Bridgewater was ordered to
kill an inmate.  *Id*. at 39.  He refused, because he had known the inmate for over 15
years.  *Id*.  Mr. Bridgewater was ordered twice more to kill other inmates, but he twice
more refused.  *Id*.

At Florence ADX, Mr. Bridgewater has used his time to read, reflect, and take a
wealth of college classes.  Mr. Bridgewater has completed over 30 courses, including
History of Africa, Personal Finance, and Stress Management.  *See* Ex. 6 at 1; *see also*
Ex. 7 (certificates).  Mr. Bridgewater has shown a commitment to his rehabilitation
during his decades in prison.

2.    <u>The impacts of decades of solitary confinement</u>

In addition to the physical health issues summarized above, Mr. Bridgewater also
suffers the effects of decades spent in restrictive confinement at ADX Florence.  As
discussed below, these symptoms can include memory loss, difficulty concentrating,
and panic attacks.

A 2014 report by Amnesty International details the conditions at Florence, where inmates are nearly entirely cut off from interacting with other human beings. *Entombed: Isolation in the U.S. Federal Prison System*, Amnesty International (2014).[17]  Inmates spend at least 22 hours a day in 87-foot individual cells with solid concrete walls.  *Id.* at 8.  All meals are eaten inside the cell, within feet of the inmate's toilet.  *Id.* at 9.  The only time an inmate can communicate directly with another inmate is when he is exercising outdoors in his individual cage, and there is an inmate in the adjacent cage.  *Id.* at 10.  This takes place at most 2-3 days a week.  *Id.*  Furthering their extreme isolation, inmates are permitted only two, 15-minute non-legal phone calls each month.  *Id.* at 16.  Amnesty International recommended various improvements to the conditions at Florence, including more opportunities for interaction with staff, daily outdoor exercise, social interaction with other inmates, and improved legal visiting.  *Id.* at 18.  Recent reports confirm that conditions have not improved.  *See USP & ADX Florence: Report on Findings and Recommendations*, D.C. Corrections Information Council (Sep. 13, 2023).[18]

Prolonged solitary confinement, like that imposed at Florence ADX, is considered torture under international human rights law.  The United Nations Special Rapporteur on Torture has declared that "any imposition of solitary confinement beyond 15 days constitutes torture or cruel, inhuman or degrading treatment or punishment, depending on the circumstances."  *See* Juan Mendez, *Interim Rep. of the Special Rapporteur of the Human Rights Council on torture and other cruel, inhuman, or degrading treatment or punishment*, U.N. Doc. A/66/268 (Aug. 5, 2011) at 21.[19]  Likewise, the United Nations Standard Minimum Rules for the Treatment of Prisoners

---

[17] Available at https://www.amnestyusa.org/wp-content/uploads/2017/04/amr510402014en.pdf

[18] Available at https://cic.dc.gov/sites/default/files/dc/sites/cic/page_content/attachments/CIC%20Inspection%20Report%20USP%20and%20ADX%20Florence%202023.pdf

[19] Available at https://digitallibrary.un.org/record/710177?ln=en&v=pdf

(the "Mandela Rules"), state that indefinite or prolonged solitary confinement for more than 15 days "shall be prohibited." *See* The Mandela Rules, Rules 43 & 44.[20]

Mr. Bridgewater has experienced these conditions for decades. Inmates at Florence ADX are not permitted to work. And Mr. Bridgewater's health issues largely prevent him from exercising, one of the few outlets inmates are permitted.

The physical and psychological impacts of prolonged solitary confinement are well documented. *See, e.g.*, Stuart Grassian, *Psychiatric Effects of Solitary Confinement,* 22 Wash. U. J.L. & Pol'y 325, 329 (2006) ("It is both tragic and highly disturbing that the lessons of the nineteenth century experience with solitary confinement are today being so completely ignored by those responsible for addressing the housing and the mental health needs in the prison setting.").

The conditions Mr. Bridgewater has endured for years further support his requested relief under the Section 3553(a) factors. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), (D).

## IV. CONCLUSION

For the foregoing reasons, Mr. Bridgewater respectfully requests that this Court grant his request for compassionate release and/or a reduction in sentence.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 18, 2025     By  */s/ Terra Castillo Laughton*

TERRA CASTILLO LAUGHTON
Deputy Federal Public Defender

---

[20] Available at https://www.unodc.org/documents/justice-and-prison-reform/Nelson_Mandela_Rules-E-ebook.pdf

14